Marcus S. SMITH; Hildegard U. Smith,
Plaintiffs–Appellants,

v.

William MARSHALL, Jr., M.D.,
Defendant–Appellee.

No. 88–5757.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1988.

Decided Sept. 26, 1989.

Walter A. Oleniewski, Ashley Joel Gardner, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, Md., for plaintiffs-appellants.

Nikki Calvano, Dept. of Justice, Civ. Div., Washington, D.C., for defendant-appellee.

Before HALL, WIGGINS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

This is a medical malpractice suit against a military physician. Jurisdiction in the district court was founded on diversity of citizenship. The case presents two questions never addressed by this circuit: (1) whether an American military physician working in a foreign country is immune from a malpractice suit under 10 U.S.C. § 1089 (1982)[1] and (2) whether the physician is immune from suit under the recently enacted Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA"). FELRTCA, Pub.L. No. 100-694, 102 Stat. 4563 (1988). The district court dismissed the complaint against the physician, substituted the United States as a defendant, and then dismissed the action. We have jurisdiction under 28 U.S.C. § 1291. We reverse.

## FACTS AND PROCEDURAL HISTORY

Sergeant Marcus Smith was stationed in Italy. William Marshall, M.D. worked as a military physician in the Army medical facility in Vicenza, Italy. He treated Hildegard Smith, Sergeant Smith's wife, during the birth of the Smiths' son, Dominique. The Smiths allege that, as a result of Dr. Marshall's negligence, Dominique sustained massive brain damage.

After the briefs were filed in this appeal, Congress enacted the FELRTCA. FELRTCA's purpose is "to protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." FELRTCA 2(b), 102 Stat. at 4564. FELRTCA applies to all actions pending on the date of its enactment and is therefore relevant in this appeal. FELRTCA § 8(b), 102 Stat. at 4565-66.

### 10 U.S.C. § 1089

In the district court, the government argued that 10 U.S.C. § 1089(a) gives the military physician, Dr. Marshall, absolute immunity from the Smiths' malpractice suit, even though the Smiths have no claim against the government under the Federal Tort Claims Act ("FTCA").[2] The Smiths have no FTCA action because their claim arose in a foreign country. 28 U.S.C. § 2680(k) (1982).

After oral argument, the government filed a supplemental brief in which it abandoned its argument that immunity for Dr. Marshall exists by virtue of section 1089(a). The government did so based upon the Eleventh Circuit's decision in *Newman v. Soballe*, 871 F.2d 969, 970 (11th Cir.1989). *Newman* was decided after oral argument in the present case. The government now relies solely on FELRTCA to support its contention that Dr. Marshall is entitled to immunity. We discuss FELRTCA later in this opinion.

In view of an apparent split among the circuits on the section 1089(a) issue,[3] con-

---

**1.** Section 1089 is often referred to as the "Gonzalez Act."

**2.** For convenience, we use the term "FTCA" to refer to 28 U.S.C. §§ 2671-2680 prior to the FELRTCA amendments.

**3.** *Compare Powers v. Schultz,* 821 F.2d 295, 297-98 (5th Cir.1987) (military doctor immune), *with Newman v. Soballe,* 871 F.2d 969, 970 (11th Cir.1989) (doctor not immune), *and Jackson v. Kelly,* 557 F.2d 735, 740-41 (10th Cir.1977) (en banc) (same), *and Pelphrey v. United States,* 674 F.2d 243, 246 (4th Cir.1982) (same).

sidering the importance of the issue, the absence of any controlling Ninth Circuit authority, and because the district court relied on the government's section 1089(a) argument and the parties have briefed and argued the question, we address and resolve the section 1089(a) issue in this appeal.

"[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 1089(a) provides in relevant part:

(a) The remedy against the United States provided by sections 1346(b) and 2672 of title 28 for damages for personal injury, including death, caused by the negligent or wrongful act of omission of any physician ... or the armed forces, ... while acting within the scope of his duties or employment therein or therefor shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician ... whose act or omission gave rise to such action or proceeding.

10 U.S.C. § 1089(a) (Supp. I 1984).

█ Read alone, section 1089(a) does not reveal whether its provisions apply to cases in which sections 1346(b) and 2672 of the FTCA do not provide an alternative remedy.[4] But section 1089(a) is just part of the statute. Section 1089(f) gives the relevant agency head the power to indemnify or provide insurance for a military physician in three specific situations; when the physician is: (1) serving in a foreign country, (2) assigned to work for an organization which is not part of the federal government, or (3)

in such circumstances as are likely to preclude the remedies of third persons under the FTCA.[5] The plain meaning of section 1089(f) is that physicians will continue to be personally liable in the three situations specified. If section 1089(a) gives military physicians total immunity, section 1089(f)'s indemnification provisions are virtually meaningless. *See Newman v. Soballe*, 871 F.2d 969, 974 (11th Cir.1989); *Anderson v. O'Donoghue*, 677 P.2d 648, 651 (Okla.1983); *cf. Jackson v. Kelly*, 557 F.2d 735, 740 (10th Cir.1977) (en banc). We must interpret section 1089 as a whole and try to give full effect to all of its subsections. *See United States v. Fields*, 783 F.2d 1382, 1384 (9th Cir.1986); *see also Newman*, 871 F.2d at 974 ("Because subsection (f) was written into the Gonzalez Act, we are required to give it meaning.").

The government initially argued in the district court that section 1089(f) is not superfluous because the section protects medical personnel serving abroad when they are sued in foreign courts. *See Powers v. Schultz*, 821 F.2d 295, 297 (5th Cir. 1987). This argument has two flaws.

First, this interpretation is unnecessarily contrived. Nothing in section 1089(f) even hints at the possibility that any of its provisions only apply to suits brought in foreign courts. And we doubt that Congress intended to require victims of alleged military medical malpractice to bring suit in foreign courts to secure judicial relief. *See Newman*, 871 F.2d at 975, 976–77 & n. 12.

Second, the government's previous construction of section 1089(f), which it assert-

---

**4.** 28 U.S.C. § 1346(b) gives the district courts exclusive jurisdiction over claims arising under the tort claims procedure chapter of title 28. 28 U.S.C. § 2672 gives top agency officials the power to adjust and settle federal tort claims. Neither statute applies to claims arising in a foreign country. 28 U.S.C. § 2680(k) (1982).

**5.** Section 1089(f) provides in relevant part:
   (f) The head of the agency concerned may ... hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, including

death, caused by such person's negligent or wrongful act or omission in the performance of medical ... functions ... while acting within the scope of such person's duties if such person is assigned to a foreign country or detailed for service with other than a Federal department, agency, or instrumentality or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28, for such damage or injury.
10 U.S.C. § 1089(f) (Supp. I 1984).

ed in the district court and before this court, fails to account for section 1089(f)'s other provisions. These provisions allow agency heads to indemnify or provide insurance for medical personnel who are detailed for service outside the federal government or are in circumstances likely to prevent third persons from obtaining relief under the FTCA. *See Newman*, 871 F.2d at 977; *cf. Anderson*, 677 P.2d at 651 (discussing section 1089(f)'s provisions for service outside the federal government).

We conclude that section 1089(a) does not give Dr. Marshall immunity from the Smiths' suit. This conclusion is consistent with the position adopted by a majority of courts which have interpreted section 1089. *See Newman*, 871 F.2d at 970; *Pelphrey v. United States*, 674 F.2d 243, 246 (4th Cir. 1982); *Jackson*, 557 F.2d at 740; *Burchfield v. Regents of University of Colorado*, 516 F.Supp. 1301, 1304 (D.Colo.1981); *Anderson*, 677 P.2d at 651.

We have also reviewed section 1089's legislative history and conclude that Congress did not intend to leave people like the Smiths without a judicial remedy in this country. *See, e.g.*, S.R.Rep. No. 94–1264, 94th Cong., 2d Sess. 9–10, 13–14, *reprinted in* 1976 U.S.Code Cong. & Admin.News 4443, 4451, 4454–55; *Newman*, 871 F.2d at 972–73; *Jackson*, 557 F.2d at 740.

Cases interpreting statutes which do not have a provision analogous to section 1089(f) are inapposite. *Cf. Newman*, 871 F.2d at 974 ("the allegedly analogous statutes relied on by the government do not have the equivalent of subsection (f)"). Only three of the cases previously cited by the government merit separate discussion. *Powers v. Schultz*, 821 F.2d 295, 297 (5th Cir.1987); *Heller v. United States*, 776 F.2d 92 (3d Cir.1985), *cert. denied*, 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986); *Baker v. Barber*, 673 F.2d 147, 148 (6th Cir.1982) (per curiam). All three cases are distinguishable.

*Heller* is clearly inapposite. The *Heller* court never reached the question whether a physician serving abroad was immune from suit because the plaintiff was unable to serve any of the individual defendants. *Heller*, 776 F.2d at 95 n. 2; *see Newman*, 871 F.2d at 975–76 (distinguishing *Heller* on the same grounds).

*Baker* is distinguishable for at least two reasons. First, *Baker* involved the construction and harmonization of three statutes: section 1089, the FTCA and the Federal Employee Compensation Act ("FECA"). 673 F.2d at 148. The FECA provides that the "liability of the United States ... is exclusive and instead of all other liability of the United States ... under a Federal tort liability statute." 5 U.S.C. § 8116(c) (1982). In *Baker*, the plaintiff was eligible for benefits under the FECA. *Baker*, 673 F.2d at 148. The present case does not involve the FECA.

Second, in *Baker*, a key issue was whether FECA cases qualified under the "circumstances likely to preclude" language of section 1089(f) so that suit could be brought against the Army physician defendants. The Sixth Circuit concluded that the "circumstances" language was inapplicable to create the FECA exception for which the plaintiff contended.

Congress was aware that federal employees are treated at times by military doctors. Because Congress declined to include [the FECA] situation *in the section of the bill in which it listed other specific exceptions*, this Court will not read the "circumstances" language to exempt from the malpractice immunity statute suits by federal employees.

*Baker*, 673 F.2d at 150 (emphasis added). Contrary to *Baker*, the case presently before us involves the specific "foreign country" exception of section 1089(f).

In *Powers v. Schultz*, 821 F.2d 295, 297–98 (5th Cir.1987), the plaintiff sued a military doctor for malpractice which allegedly occurred in a foreign country. The Fifth Circuit held that section 1089(a) and the FTCA barred the suit. "When suit falls [under section 1089(a) ] and there can be no recovery [under the FTCA], the plaintiff has reached the end of the line." *Powers*,

821 F.2d at 298 (quoting *Jones v. Newton*, 775 F.2d 1316, 1318 (5th Cir.1985)); *see also* 28 U.S.C. § 2680(k). The Fifth Circuit dismissed the suit.

*Powers* is distinguishable. The plaintiff-appellant in *Powers* did not contest "the substitution of the United States as party defendant or ... the district court's holding that the United States is immune from suit." 821 F.2d at 296. In this case, the propriety of substituting the United States as defendant is a central issue. *See Newman*, 871 F.2d at 975 (distinguishing *Powers* on the same basis). Furthermore, *Powers'* authority is undercut by the court's failure to discuss or distinguish cases such as *Jackson* or *Pelphrey* which appear to directly conflict with the result in *Powers*. To the extent that our opinion is inconsistent with *Powers*, we respectfully decline to follow it.

Our review of section 1089's statutory language, its legislative history, and the relevant case law convinces us that section 1089(a) does not provide a military medical doctor with immunity from suit for medical malpractice which occurs in a foreign country. We now consider whether Dr. Marshall has immunity under FELRTCA.

### FELRTCA

■ The government argues that FELRTCA, an act amending the FTCA, provides an independent source of immunity for Dr. Marshall. The pertinent portions of FELRTCA provide:

SEC. 5. EXCLUSIVENESS OF REMEDY.

Section 2679(b) of title 28, United States Code, is amended to read as follows:

"(b)(1) The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred...."

SEC. 6. REPRESENTATION AND REMOVAL.

Section 2679(d) of title 28, United States Code, is amended to read as follows:

"(d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant...."

"(4) Upon certification, any action or proceeding subject to paragraph (1), (2), or (3) shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions...."

FELRTCA §§ 5–6, 102 Stat. at 4564–65.

We conclude that FELRTCA is inapplicable to this case.

FELRTCA provides that "[t]he remedy against the United States ... is exclusive of any other civil action or proceeding for money damages ... against the employee whose act or omission gave rise to the claim...." FELRTCA § 5, 102 Stat. at 4564 (to be codified at 28 U.S.C. § 2679(b)(1)). The foreign country exception to the FTCA exempts the United States from liability on "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k).

When Congress enacted FELRTCA it did not amend the FTCA's section 2680(k). FELRTCA is part of the FTCA, and thus the foreign country exception of section 2680(k) remains to preclude an action against the United States on a claim arising in a foreign country. The claim in the present case arose in Italy. The Smiths, therefore, have no remedy against the United States. Because they do not, FELRTCA does not operate to provide Dr. Marshall with immunity.

Had Congress intended to extend FELRTCA immunity to individual government employees for tort claims arising in foreign countries it could have done so quite easily. Indeed, this is just what Congress did with regard to claims against Tennessee Valley Authority employees. Under the FTCA, the United States is exempt from liability on "[a]ny claim arising from the activities of the Tennessee Valley Authority." 28 U.S.C. § 2680(*l*). In enacting FELRTCA, Congress included a specific section which provides that "[a]n action against the Tennessee Valley Authority for ... personal injury or death arising from the negligent ... act or omission of any employee of the Tennessee Valley Authority while acting within the scope of ... employment is exclusive of any other civil action or proceeding ... against the employee." FELRTCA § 9, 102 Stat. at 4566–67. The fact that Congress felt it necessary to specifically mention TVA employees in FELRTCA, strongly suggests that Congress believed that absent specific language in FELRTCA extending FELRTCA immunity to TVA employees, these employees would remain without immunity following the enactment of FELRTCA. *Cf.* 10 U.S.C. § 1089(e) (modifying the effect of section 2680's assault and battery exception in cases of military malpractice).

Unfortunately, FELRTCA's legislative history is somewhat contradictory. On the one hand, the general purpose of FELRTCA is clear. "It is the purpose of [FELRTCA] to protect Federal employees from personal liability for common law torts committed within the scope of their employment, *while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States.*" FELRTCA § 2(b), 102 Stat. at 4564 (emphasis added). And the House Committee emphasized that under FELRTCA "no one who previously had the right to initiate a lawsuit will lose that right." H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U.S. Code Cong. & Admin.News 5945, 5951; *see also* 134 Cong. Rec. H4719 (daily ed. June 27, 1988) (remarks of Rep. Wolf) ("In no way does this measure infringe or diminish any legal rights of the individual."); *id.* at S15599–600 (daily ed. Oct. 12, 1988) (remarks of Sen. Grassley); *id.* at S15511–12 (daily ed. Oct. 11, 1988) (remarks of Sen. Humphrey). These legislative statements support our conclusion that FELRTCA did not take away the Smiths' cause of action against Dr. Marshall.

On the other hand, the following statement appears in the House Report:

The "exclusive remedy" provision of section 5 is intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment. Therefore, suits against Federal employees are precluded even where the United States has a defense which prevents an actual recovery. Thus, any claim against the government that is precluded by the exceptions set forth in Section 2680 of Title 28, U.S.C. also is precluded against an employee in [sic] his or her estate. See *Edelman v. Federal Housing Administration*, 382 F.2d 594 (2d Cir.1967); *Safeway Portland E.F.C.U. v. Federal Deposit Insurance Corporation*, 506 F.2d 1213 (9th Cir.1974); *Vantrease v. United States*, 400 F.2d 853 (6th Cir.1968); *Powers v. Schultz*, 821 F.2d 295 (5th Cir. 1987).

H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 6–7, 1988 U.S.Code Cong. & Admin. News 5945, 5950. The report does not

mention the foreign country exception specifically. The report cites *Powers v. Schultz*, a case we distinguish and decline to follow, but does not discuss cases such as *Jackson* and *Pelphrey* which conflict with *Powers*.

We cannot reconcile the report's promise that the rights of individual claimants would not be diminished, with the assertion that "any claim against the government that is precluded by the exceptions set forth in Section 2680 of Title 28, U.S.C. also is precluded against an employee in [sic] his or her estate." H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 6–7, 1988 U.S.Code Cong. & Admin.News 5945, 5950–51. We conclude that the report is internally inconsistent. But the statutory language is not. And we join the Eleventh Circuit in holding that FELRTCA does not bar medical malpractice claims brought against military personnel serving abroad. *Newman*, 871 F.2d at 971.

## CONCLUSION

We reverse the district court's orders which dismissed the medical malpractice claim against Dr. Marshall, and which substituted the United States for Dr. Marshall and dismissed the action. We remand for further proceedings.

REVERSED AND REMANDED.