STEVEN GEORGE PORTEN AND SHANN CATHRO WESTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Porten v. Commissioner
Docket No. 10915-91
United States Tax Court
T.C. Memo 1993-73; 1993 Tax Ct. Memo LEXIS 71; 65 T.C.M. (CCH) 1994; March 3, 1993, Filed *71 Decision will be entered under Rule 155. Steven George Porten, pro se. For respondent: Cheryl B. Harris. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal income tax for tax year 1988 in the amount of $ 268. After allowance of additional Schedule C deductions by respondent, the sole issue for decision is whether petitioners are required to recognize income from cancellation of debt as a result of the partial forgiveness of a student loan made to Shann Cathro Weston by the State of Alaska. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Portland, Oregon, when they filed their petition. In 1984, 1985, and 1986, Shann Cathro Weston (hereinafter referred to as petitioner) received student loans from the State of Alaska to cover the expenses of her *72 tuition and books. Petitioner signed promissory notes which contained provisions granting partial cancellation of her debt if she resided and worked in Alaska. The amount of the loan forgiveness was proportionate to the number of years petitioner worked in Alaska. The note also provided that petitioner was eligible for cancellation of debt if she was employed outside the geographical boundaries of Alaska but remained a resident of Alaska and was subject to Alaska State income tax. Petitioner earned her Master's degree in 1986, obtained a job working for a native nonprofit corporation, and worked for approximately 2 years in Alaska. She was then eligible for partial cancellation of her loan balance. Petitioner applied for loan cancellation in 1988 and was informed that $ 1,690 of her debt was cancelled. She did not report this cancellation of debt as income for 1988. After the cancellation, the amount of petitioner's monthly payments on the loan remained the same, but fewer payments were required. In 1990, the Legislature of the State of Alaska passed a joint resolution expressing its view of the Federal income tax treatment of forgiveness of Alaska student loans as follows: *73 BE IT RESOLVED BY THE LEGISLATURE OF THE STATE OF ALASKA: WHEREAS the original intent of the forgiveness provision in the state student loan program was to provide a nontaxable grant to the student; and WHEREAS many student loans made before July 1, 1987, are eligible for up to 50 percent forgiveness under the state student loan program; and WHEREAS the Internal Revenue Service is currently treating Alaska student loans that are discharged through the forgiveness provision as taxable income; and WHEREAS state residents who benefited from the student loan program were unaware of their tax liability and assumed that a forgiven student loan was not subject to taxation under federal law; and WHEREAS the Internal Revenue Service is currently interpreting the Internal Revenue Code as imposing tax liability in a year in which the student actually receives no cost saving from loan payments because of the student's eligibility for forgiveness; and WHEREAS the Congress is considering S. 1803 and H.R. 3518, both of which would change the taxable status of student loans and allow loans that are forgiven by this state to be excludable from gross income for purposes of federal income *74 taxation; BE IT RESOLVED that the Alaska State Legislature urges the Congress to consider and pass either S. 1803 or H.R. 3518, thereby allowing that portion of a student loan made by this state that qualifies for forgiveness to be excludable from gross income for purposes of federal income taxation; and be it FURTHER RESOLVED that the Internal Revenue Service is urged to reconsider and reverse its decision that Alaska student loans discharged through the forgiveness program are taxable income. [Legislative Resolve No. 95, State of Alaska Legislature, 1990.]
Respondent determined that petitioner received income from cancellation of debt. Petitioner argues, in the alternative, that the cancellation of her debt does not give rise to income (1) because it constitutes a scholarship, (2) because it constitutes a gift, (3) because it falls within the income exclusion provision of section 108(f), or (4) because the loan was a contingent liability. Petitioner also argues that it is unfair for her to be charged interest on the deficiency, as respondent had not previously enforced the law by imposing tax on income from cancellation of debt for Alaska student loans. The determination *75 of respondent is presumed to be correct, and petitioner bears the burden of proving respondent erred in the determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Section 61(a) provides that gross income means all income from whatever source derived, including income from discharge of indebtedness. Sec. 61(a)(12). Obtaining a loan is not a taxable event, despite the accession to wealth, because of the obligation to repay the loan. But when a taxpayer is released from that obligation, he or she has realized an accession to income because the cancellation effects a freeing of assets previously offset by the liability arising from such indebtedness. United States v. Kirby Lumber Co., 284 U.S. 1 (1931); Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). In other words, at the moment when petitioner became entitled to cancellation of debt, her net worth increased, giving rise to income from cancellation of debt, regardless of the fact that she was required to continue repaying the loan in 1988. Scholarship
Petitioner argues that the forgiveness of her loan is a scholarship *76 and hence does not give rise to taxable income. "Gross income does not include any amount received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii)." Sec. 117(a). A "qualified scholarship" means any amount "received by an individual as a scholarship or fellowship grant" to the extent the individual establishes it was used for tuition and fees and related expenses such as books, supplies, and equipment required for courses. Sec. 117(b). Section 117(b) requires that the amount be "received * * * as a scholarship or fellowship grant". Amounts received by petitioner were received as loans, for which she signed promissory notes. These amounts did not have the normal characteristics associated with the term "scholarship", i.e., a relatively disinterested, "no-strings" educational grant, with no requirement of any substantial quid pro quo from the recipient. Bingler v. Johnson, 394 U.S. 741, 752 (1969); Meek v. United States, 608 F.2d 368 (9th Cir. 1979). The amounts received by petitioner were evidenced by a note which gave *77 rise to a true debt: a sum certain payable over a specific period of time at a stipulated rate of interest. Church of Scientology v. Commissioner, 823 F.2d 1310 (9th Cir. 1987), affg. 83 T.C. 381 (1984). Petitioner argues that it was the forgiveness of her loan which constituted the scholarship. Petitioner directs our attention to the Alaska Statutes, which describe a student loan as a "scholarship loan". Alaska Stat. sec. 14.43.090(a) (1992). The 1990 joint resolution of the Alaska Legislature states that "the original intent of the forgiveness provision in the state student loan program was to provide a nontaxable grant to the student". These provisions make it clear, however, that a "scholarship loan" was a loan to promote scholarship, not a "scholarship" in the usual sense of the term. The grant was seen as taking place at the time the loan was partially forgiven. The characterization provided by State law is not binding for purposes of determining taxability under Federal income tax statutes. To hold otherwise would permit state legislatures to define taxable income for purposes of Federal taxation. Turner v. Commissioner, T.C. Memo. 1978-165 *78 (holding State characterization of payments as educational stipend not binding for Federal income tax purposes); Batson v. Commissioner, T.C. Memo. 1977-339 (same); Haygood v. Commissioner, T.C. Memo. 1977-71 (same). It is clear that the State of Alaska offered the loan forgiveness to induce college graduates to remain in Alaska. Alaska Congressman Don Young stated in a letter dated October 12, 1989, to Treasury Secretary Nicholas Brady that, prior to the enactment of the loan forgiveness clause, Alaska was experiencing a "brain drain"; consequently, "The State of Alaska, with its own funds, created this forgiveness clause as a way to encourage its students to return." This statement sums up the quid pro quo in the loan forgiveness. Petitioner was relieved of her obligation to repay $ 1,690 of her student loan in exchange for having lived and worked in Alaska for a certain period of time after graduation. The facts of this case differ from the typical compensation-related educational grant, where an employee receives funds from an employer to pursue his or her education in exchange for future services to the employer. *79 See Bingler v. Johnson, supra.Here the State of Alaska extended petitioner a loan. Petitioner earned her loan forgiveness by fulfilling a condition subsequent to the granting of the loan: completing her degree program and working in Alaska for a certain period of time. The offer of loan forgiveness thus represented consideration to petitioner for remaining in Alaska. For the reasons stated above, we hold that cancellation of petitioner's debt under the Alaska student loan program does not constitute a scholarship. Gift
Petitioner argues in the alternative that the forgiveness of her loan constitutes a gift. Section 102(a) provides that gross income does not include the value of property acquired by gift. Our finding above of a quid pro quo effectively rules out the possibility of a gift. The term "gift" was defined in Commissioner v. Duberstein, 363 U.S. 278, 285 (1960), as a transfer resulting from a "detached and disinterested generosity * * * out of affection, respect, admiration, charity or like impulses". (Citations omitted.) See Hoptowit v. Commissioner, 709 F.2d 564 (9th Cir. 1983), *80 affg. 78 T.C. 137 (1982). The fact that Alaska offered the loan forgiveness as an incentive for continued residence in the State and forgave student loans only when the residency requirement was fulfilled indicates that the forgiveness was not a gift. Section 108(f) Exclusion
Petitioner argues that the loan forgiveness falls within the exclusion of section 108(f) and hence does not give rise to income. Section 108(f)(1) provides: In General. -- In the case of an individual, gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of any student loan if such discharge was pursuant to a provision of such loan under which all or part of the indebtedness of the individual would be discharged if the individual worked for a certain period of time in certain professions for any of a broad class of employers.
A student loan is any loan to an individual to assist the individual in attending an educational organization made by, inter alia, a State. Sec. 108(f)(2). The main clause of section 108(f)(1) contemplates that forgiveness of student loans *81 generally gives rise to income: "gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of any student loan". The following subordinate clauses add a condition: "if such discharge was pursuant to a provision of such loan under which all or part of the indebtedness of the individual would be discharged if the individual worked for a certain period of time in certain professions for any of a broad class of employers." The clear implication is that forgiveness of student loans, other than those identified in the statute, gives rise to income from discharge of indebtedness. Sec. 108(f)(1). [1] The condition to forgiving a portion of petitioner's loan was that she remain for a minimum of 2 years an employed resident of Alaska. This requirement has no reference to "certain professions" or "a broad class of employers." Petitioner was entitled to enter any occupation and work for any employer. Although she began a career of public service, she was not required to do so to obtain loan forgiveness. *82 If we were to read section 108(f)(1) as petitioner suggests, we would have to read the phrase "in certain professions" out of the subordinate clauses of the statute. We follow the "'elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant". 2A Sutherland Statutory Construction, sec. 46.06 (1986) (citations omitted). See United States v. Fields, 783 F.2d 1382, 1384 (9th Cir. 1986) (statute should be interpreted to give full meaning to all provisions); Vetco v. Commissioner, 95 T.C. 579, 592 (1990). We hold that section 108(f) does not apply in this case to protect petitioner from income from cancellation of debt. Contingent Obligation
Petitioner's fourth theory is that she realized no income from cancellation of debt because her obligation was contingent. Petitioner cites Corporacion de Ventas de Salitre Y Yode de Chile v. Commissioner, 130 F.2d 141 (2d Cir. 1942), *83 revg. 44 B.T.A. 393 (1941), holding that extinguishment of a debt payable only out of future corporate profits did not give rise to income. Petitioner's reliance on this case is misplaced. We do not agree. The reason that there is no income from cancellation of contingent debt is that a contingent liability gives rise to no fixed obligation. A debt is an obligation to pay a fixed amount of money at a certain date at a fixed rate of interest. In Corporation de Ventas v. Commissioner, supra, a Chilean corporation reacquired debentures of its predecessor at a discount. The corpoation's liability was limited under Chilean law: it was under no obligation to pay principal or interest on the debentures unless it had net earnings sufficient for that purpose. At the time the debt was acquired, the amount of the obligation could not be ascertained. Hence there was no cancellation of debt. Similarly, in Hunt v. Commissioner, T.C. Memo. 1990-248, a contractual obligation to make payments based on the contingency of the amount of future profits was not a true debt. Its cancellation did not give *84 rise to income. By contrast, when petitioner signed the promissory notes, she agreed to pay a fixed sum on a fixed date at a fixed rate of interest. Her debt arose at that time. Fulfillment of a condition subsequent entitled her to partial cancellation of the debt. But this does not shield her from discharge of indebtedness income on the theory that the amount of the debt or the obligation to repay was contingent when the debt was incurred. The facts of this case are more similar to cases in which a creditor discharges a debtor's obligation in exchange for services or some form of nonmonetary consideration. See OKC Corp. v. Commissioner, 82 T.C. 638 (1984) (holding section 108 does not apply where creditor discharges debtor's obligation in exchange for settlement of a lawsuit). We hold that petitioner realized income on the partial cancellation of her State of Alaska student loan. Interest
Petitioner contends that interest should not accrue on the deficiency because the lack of enforcement of the provisions of the law governing income from discharge of debt has left her without warning of her impending tax liability. As a general rule, *85 this Court does not have jurisdiction over questions concerning interest under section 6601(a). LTV Corp. v. Commissioner, 64 T.C. 589, 597 (1975); Hudgins v. Commissioner, 55 T.C. 534, 538 (1970); Chapman v. Commissioner, 14 T.C. 943, 946-947 (1950), affd. per curiam 191 F.2d 816 (9th Cir. 1951). There are certain narrowly defined exceptions, but none of them apply to this case. See, for example, section 7481(c) (giving this Court jurisdiction to review the amount of interest, but only after it has been assessed and paid). On the basis of the foregoing, Decision will be entered under Rule 155. Footnotes
1. The certain professions are medicine, nursing, and teaching. Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 (J. Comm. Print 1984) at 1199. Cf. Rev. Rul. 73-256, 1973-1 C.B. 56, as modified by Rev. Rul. 74-540, 1974-2 C.B. 38↩ (under prior law, cancellation of student loan for attending medical school, where recipient practiced medicine in rural area for specified period after completing education, was not tax-free scholarship but was taxable income from discharge of indebtedness).